**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
---------------------------------
**ERIC J. KARLE,**

                 **Plaintiff,**       12 Civ. 3933 (JGK) (AJP)

        - v. -                   **MEMORANDUM OPINION AND**
                                               **ORDER**
**CAROLYN W. COLVIN, Acting**
**Commissioner of Social Security,**

                 **Defendant.**
---------------------------------

**JOHN G. KOELTL, District Judge:**

    This case involves a claim for Disability Insurance Benefits under the Social Security Act, 42 U.S.C. §§ 401-434. The Administrative Law Judge ("ALJ") of the Social Security Administration determined that the plaintiff, Eric J. Karle, was not "disabled" under §§ 216(i) and 223(d) of the Social Security Act, 42 U.S.C. §§ 416(i) and 423(d). The ALJ's decision became the final decision of the Commissioner of Social Security ("Commissioner") when the Appeals Council denied review. The plaintiff brought this action under § 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to challenge this final decision.

    The Court has received the Report and Recommendation of Magistrate Judge Peck recommending that the defendant's cross motion for judgment on the pleadings be denied and that the plaintiff's motion for judgment on the pleadings be granted to

the extent of remanding the case to the Commissioner for further proceedings.  The Magistrate Judge concluded that the ALJ erred in failing to consider the testimony of a vocational expert ("VE") at step five of the sequential analysis to determine disability and also in failing to explain why the VE's testimony was disregarded.  The Commissioner makes a limited objection to the recommendation of the Magistrate Judge.  The Commissioner objects to remanding the case for express consideration of the VE's testimony, and argues that the ALJ's decision denying disability benefits was proper.

I.

Pursuant to 28 U.S.C. § 636(b)(1)(C), any portion of a magistrate judge's Report and Recommendation to which objection is made is subject to de novo review.  See, e.g., McClain ex rel. McClain v. Halter, No. 99 Civ. 3236, 2001 WL 619177, at *1 (S.D.N.Y. June 5, 2001); DeJesus v. Chater, 899 F. Supp. 1171, 1174-75 (S.D.N.Y. 1995).

A Court may set aside a determination by the Commissioner only if it is based upon legal error or is not supported by substantial evidence in the record.  See 42 U.S.C. §§ 405(g); Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982); Dousewicz v. Harris, 646 F.2d 771, 773 (2d Cir. 1981).  Substantial evidence is "more than a mere scintilla," it is "such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); see also Urena-Perez v. Astrue, No. 06 Civ. 2589, 2009 WL 1726212 (S.D.N.Y. June 18, 2009).

## II.

In making a determination of disability, the Commissioner applies a five-step sequential analysis, the fifth step of which provides that, "if the claimant is unable to perform [the claimant's] past work, the burden then shifts to the Commissioner to determine whether there is other work which the claimant could perform." Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir. 1999). At this step, the Commissioner "may rely on the medical-vocational guidelines contained in 20 C.F.R. Part 404, Subpart P, App. 2, commonly referred to as 'the Grid.'" Zorilla v. Chater, 915 F. Supp. 662, 667 (S.D.N.Y. 1996). The grids classify work into different categories based on the "exertional" (strength-related) requirements of the jobs and provide a determination of whether a claimant is "disabled" based on the exertional impairments of the claimant. Davis v. Comm'r of Soc. Sec., No. 12 Civ. 2221, 2013 WL 2152568, at *5, *5 n.7 (S.D.N.Y. May 20, 2013). However, if a non-exertional limitation is present and "significantly diminish[es]" the

3

claimant's ability to work, the Commissioner cannot rely solely on the grids and is instead required to introduce the testimony of a VE in order to determine whether "jobs exist in the economy which claimant can obtain and perform." Bapp v. Bowen, 802 F.2d 601, 603 (2d Cir. 1986); see also Vargas v. Astrue, No. 10 Civ. 6306, 2011 WL 2946371, at *10 (S.D.N.Y. July 20, 2011) (quoting Bapp, 802 F.2d at 603).  Moreover, during the five-step analysis, the Commissioner must assess the "residual functional capacity" ("RFC") of the claimant, 20 C.F.R. § 404.1520.  The RFC refers to "the most [the claimant] can still do despite [the claimant's] limitations," and the RFC of a claimant determines the claimant's ability to obtain and perform work.  20 C.F.R. § 404.1545(a)(1); Selian v. Astrue, 708 F.3d 409, 418 (2d Cir. 2013).

In this case, the ALJ determined that the plaintiff had severe impairments, but retained the RFC to perform light work. (Administrative Record ("R.") 22.)  The ALJ also determined that the plaintiff is unable to perform any past relevant work.  (R. 23-24.)  However, at the fifth step of the sequential analysis for disability, the ALJ did not refer at all to the conclusion of the VE that the ALJ had called.  The VE testified that there were no jobs in the national economy for a hypothetical individual with limitation on bilateral manual dexterity and who would be off task ten percent of the time.  (R. 61.)  This

hypothetical was based on the plaintiff's complaints and supporting medical evidence. Without explanation, the ALJ ignored this testimony and simply applied the grids to find the plaintiff not disabled. (R. 24.) The Magistrate Judge found that the ALJ erred by failing to articulate the reasons for his decision to ignore the VE's determination. The Magistrate Judge found that it was appropriate to remand in order for the ALJ to consider expressly the VE's testimony at step five of the sequential analysis.

The Commissioner objects to the Magistrate Judge's conclusion that the ALJ erred in failing to consider the VE's testimony at step five of the analysis. The Commissioner argues that the ALJ properly determined that the plaintiff did not suffer from non-exertional limitations and thus properly relied on the grids in deciding that the plaintiff was not disabled without addressing the VE's testimony.

In assessing the claimant's RFC, the Commissioner "will consider all of [the claimant's] medically determinable impairments . . . , including [the] impairments that are not 'severe' . . . ." 20 C.F.R. § 404.1545; see also Selian, 708 F.3d at 418. There is no dispute with respect to the restriction on heavy lifting caused by the plaintiff's disc herniations of the cervical and thoracic spine, and by his scoliosis. (R. 21-23.) However, in addition to these

5

impairments, the plaintiff asserts that he suffers from non-exertional impairments caused by thoracic radiculopathy and/or thoracic neuralgia. (R. 20-21.) The ALJ excluded these impairments from the RFC considerations, stating that these impairments were not "medically determinable" because "there has been no clinical evidence to document such a diagnosis, insofar as [electromyography (EMG)] testing adduced negative responses." (R. 21.)

The ALJ is required to give "controlling weight" to the treating physician's opinion if the opinion is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(c)(2); Green-Younger v. Barnhart, 335 F.3d 99, 106 (2d Cir. 2003). The ALJ should not require "objective evidence beyond the clinical findings necessary for a diagnosis." Green-Younger, 335 F.3d at 106. Even when the ALJ does not give "controlling weight" to a treating physician's opinion, the ALJ is required to "give good reason . . . for the weight [given] to the treating source's opinion." 20 C.F.R. § 404.1527(c)(2).

In this case, Dr. Mark W. Green's Attending Physician's Statement on April 23, 2007, as well as his reports on July 7, 2008 and on December 16, 2008, all conclude that the plaintiff was diagnosed with thoracic radiculopathy. (R. 207, 240, 243.)

6

Dr. Green's reports also indicate instances of the plaintiff experiencing electric shock-like pain upon sensory examination. (R. 240, 243, 244.)  Dr. Rose Chan's consultative orthopedic examination report on March 25, 2008 mentions the diagnosis of "cervicobrachial neuralgia" and "[l]eft upper extremity neuralgia."  (R. 221.)  Therefore, there is substantial evidence that the plaintiff's thoracic radiculopathy and neuralgia were medically diagnosed conditions.

There is also substantial evidence that the plaintiff's asserted non-exertional limitations were medically traceable to these diagnoses.  In particular, Dr. Green's July 7, 2008 report mentions "electric shocks on T1 [Thoracic vertabra No. 1] and across ribs on left side" which "[i]f twists, turns, gets worse."  (R. 240.)  Similarly, Dr. Green's December 16, 2008 report comments: "left T1 radiculopathy; cause not yet determined; however[, the pain] is mechanically triggered and [he] cannot work as chiropractor. He cannot remain in a single position for long."  (R. 243.)  Meanwhile, the VE's testimony regarding job availability to the plaintiff appears to be based precisely on these impairments, namely, pains on the left side that caused the plaintiff to "wince" and that interrupted his activities "multiple times during [a] day."  (R. 61.)  The VE specifically testified that, given the left hand side symptoms that the plaintiff testified to, the VE would not be able to

7

find jobs in the national or regional economy for such an individual, due to the inability to perform work requiring bilateral manual dexterity. (R. 60.) Moreover, the VE testified that such an individual, where pain causes him to wince and stop what he is doing, would require time off task, and the VE would have great difficulty finding work for such an individual. (R. 61.)

The ALJ provided no explanation at all as to why this testimony was ignored. The hypotheticals provided to the VE were consistent with medical evidence and the plaintiff's testimony. The evidence showed that there were in fact non-exertional limitations that prevented the grids from being used and that, when a VE was consulted, the Commissioner failed to carry the burden of showing that there were jobs available in the economy that the plaintiff could perform. At the very least, as the Magistrate Judge correctly concluded, the ALJ was required to provide an explanation for his decision to ignore the medical evidence and the testimony of the VE. (Report and Recommendation at 35-37.) Accordingly, the ALJ's sole reliance on the grids was improper, and the Magistrate Judge's Report and Recommendation is correct in finding that the case should be remanded to the Commissioner for further proceedings. Therefore, the Commissioner's objection is **overruled**.

8

**CONCLUSION**

The Court has considered all of the arguments of the parties. To the extent not specifically addressed above, the remaining arguments are either moot or without merit. The Report and Recommendation of the Magistrate Judge is **adopted**. The decision by the ALJ is **vacated**. The Commissioner's cross motion for judgment on the pleadings is **denied** and the plaintiff's motion for judgment on the pleadings is **granted** to the extent that this case is **remanded** to the Commissioner for further proceedings consistent with this opinion. **The Clerk is directed to enter Judgment and to close this case.**

**SO ORDERED.**

**Dated:   New York, New York**
**        September 5, 2013**                    _____/s/_____
                                                **John G. Koeltl**
                                        **United States District Judge**